## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| vs. | **Case No: 14-03106-06-CR-S-MDH** |
| **ANTHONY M. MASSONI,** | |
| Defendant. | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Tammy Dickinson, United States Attorney for the Western District of Missouri, and undersigned counsel respectfully submits this sentencing memorandum in the above-captioned matter. For the reasons set forth below, the Government recommends that this Court sentence the defendant, Anthony M. Massoni, to a term of incarceration of 60 months for Counts 1, 28 and 59 and to an appropriate term of supervised release.

## I. BACKGROUND

The defendant, on May 25, 2016, pled guilty pursuant to a written plea agreement to Count 1 of the Second Superseding Indictment charging him with Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A), and Counts 28 and 59 (possession of a firearm by a prohibited person) in violation of 18 U.S.C. § 922(g)(3). Additionally, the defendant also admitted to Forfeiture Allegations 4, 9, and 12. (PSR ¶ 1). On June 9, 2016, the final Presentence Investigation Report (PSR) was filed, indicating that the defendant's base offense level, after acceptance of responsibility, for Counts 1, 28 and 59 was

37, with a criminal history category of I. (PSR ¶ 80). The defendant's presentence investigative report indicated that his sentencing range was 210 to 262 months. (PSR ¶ 80). There is a statutory minimum sentence in this case for Count 1 of ten years and a maximum term of imprisonment of life. (PSR ¶ 79). The government has no objections to the presentence report and has also filed a downward departure motion pursuant to Section 5K1.1 of the United States Sentencing Guidelines and 18 U.S.C. § 3553(e) to allow for a sentence below the applicable statutory minimums and Sentencing Guidelines in this case.

## II. <u>LEGAL STANDARD</u>

Although the Sentencing Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220 (2005), sentencing still begins with a properly calculated advisory Sentencing Guidelines range. *See Gall v. United States*, 128 S. Ct. 586, 596 (2007); *Rita v. United States*, 127 S. Ct. 2456, 2464-65 (2007); *Booker*, 543 U.S. at 245-46; *United States v. Plaza*, 471 F.3d 928, 930 (8th Cir. 2006). Next, the Court must decide if a traditional departure under the Guidelines is appropriate, thus creating an advisory Guidelines sentencing range. *Plaza*, 471 F.3d at 930. After calculating the advisory Guidelines range, the Court considers that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence. *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007); *Plaza*, 471 F.3d at 930. The government filed no objections to the PSR and agrees with its findings. The defendant filed two objections which do not affect in any way the PSR's guideline determination.

## III. DISCUSSION

### A.      Statutory and Guidelines Calculations

The defendant's presentence investigative report indicated that his sentencing range for Counts 1, 28 and 59 would be 210 to 262 months.  There is a statutory minimum in this case for Count 1 of ten years.  The statutory maximum sentences for Counts 28 and 59 are ten years.  The Government concurs with these calculations.

### B.      Statutory Sentencing Factors

#### 1.      Nature and Circumstances of the Offense

The defendant was involved with the Kenna Harmon Drug Trafficking Organization (DTO) which was a large scale conspiracy to distribute methamphetamine throughout southwest Missouri in the years 2013 and 14.  During the investigation, agents received information from reliable confidential sources that Kenna Harmon was building two residences located in Polk County, Missouri.  According to these sources, one residence was intended to be her home, while the second residence, known as the "shop house" is intended to be the residence of her brother, Joseph Allen.  The residences were being constructed by a builder known as David Hennigah.  Harmon paid Hennigah in cash for the construction of the residences.  The money used to purchase the property and construct the houses derived from drug proceeds earned by the Harmon DTO.

In order to protect her drug assets, Harmon provided Massoni with a container which contained approximately $200,000 in United States currency.  Massoni knew or had reason to believe that the money in the container provided by Harmon was proceeds from the distribution of methamphetamine by the Harmon DTO.  Harmon requested that Massoni use the money to

Case 6:14-cr-03106-MDH   Document 721   Filed 08/29/16   Page 3 of 11

pay off debts owed by Harmon to persons in the area, including payments to Hennigah for the construction of the residences in Polk County, Missouri.

On September 4, 2014, at approximately 11:08 am, surveillance was conducted at 648 Dana, Republic Missouri. A motorcycle was observed in the driveway of the residence. The motorcycle had a license plate of CZ4TY. A check of the license plate through the Missouri Department of Revenue revealed the registered owner as Anthony MASSONI. On September 4, 2014, at approximately 11:35 pm, officers with the Springfield Police Department (SPD) responded to W. Kearney Springfield, Missouri, in reference to an assault involving a male, later identified as Anthony Massoni, who allegedly pointed a handgun at another person at the address. No injuries were reported and Massoni left the location driving a red convertible car with a Missouri license plates. The vehicle was traffic stopped by the SPD approximately one mile east of the location on W. Kearney Springfield, Missouri. The driver of the vehicle was identified as Massoni. Massoni was arrested after officers saw a handgun in a holster lying in the passenger seat of vehicle in plain view. An SPD Officer and his K-9 responded to the location where the K-9 indicated on the vehicle. A search of the vehicle resulted in the seizure of a user amount of methamphetamine, a Taurus Intl. 1911 semi-auto .45 caliber handgun, approximately $20,000 in U.S. Currency, 2 cellular telephones, and ammunition. This $20,000 seized was from the money provided to Massoni by the Harmon DTO.

On September 12, 2014, at 11:21 am, an outgoing telephone call was intercepted on Harmon's telephone number, pursuant to a T-III order. A female, identified as Jennifer Massoni, the wife of Anthony Massoni, answered the telephone. Harmon told Jennifer that she tried to leave "Anthony" a message. Harmon stated she had received the totals from "Dave" out at the "house." Harmon stated she had the $16,700 that should go to "Hermann's." Harmon also

Case 6:14-cr-03106-MDH   Document 721   Filed 08/29/16   Page 4 of 11

stated that "there's also $4,994 that goes to Dave for his crew and the labor. It's basically $5,000 for that and $6,000 for the Newman's." Anthony Massoni then took the telephone from Jennifer. Harmon told Massoni that she needed more money then what she had told him to bring. Harmon told Massoni that she needed $30,000 instead of $20,000. Harmon told Massoni that with the extra $10,000 that it puts him at exactly "100 out of that one deal." Harmon told Massoni that she had borrowed a "total of 100 now." This conversation between Harmon and Massoni concerned the two residences under construction in Polk County, Missouri. Harmon was instructing Massoni to use some of the money derived from the Harmon DTO she had provided to him to pay Hennigah for the construction costs at the residences.

On November 28, 2014, agents served a federal search warrant at a storage unit at N. Farm Road 185, Springfield, Unit #130, Missouri, Greene County, Missouri. The unit had a contact name of Anthony MASSONI. During the search of the unit, agents found paperwork for a tattoo shop, Artistic Armor in Branson, Missouri. According to information gained in this investigation, the tattoo shop was owned by Kenna Harmon but was in the name of Anthony Massoni in order to hide the asset from law enforcement.

On November 29, 2014, law enforcement agents traveled to Massoni's residence at 801 W. Woodridge Springfield, Missouri. Agents talked to Jennifer and Anthony Massoni. Anthony Massoni gave agents consent to search the residence. While searching the residence, the agents discovered a loaded Taurus Model 608, .357 caliber handgun, serial number HM888751, lying on the couch in living room along north wall; eight .357 caliber Hornady bullets; and miscellaneous ammunition. Agents also found multiple safes inside the residence which Anthony Massoni gave consent to the agents to search. No illegal contraband was found in these safes. Agents also discovered a Fortress brand safe located along the west wall of the living

room of the residence. When agents asked Anthony Massoni to open the Fortress brand safe, Anthony Massoni attempted to open it by entering the pass code multiple times. When the safe failed to open, Anthony Massoni stated that he had forgotten the code. While Anthony Massoni was trying to open the safe, Jennifer Massoni stated Anthony Massoni made her put her jewelry inside the safe every night. Anthony Massoni then told the agents that there was an additional handgun inside the safe, along with $40,000 in United States currency and jewelry.

Agents then took custody of the Fortress brand safe and it was transported to the SPD Headquarters in Springfield, Missouri, where it was placed in a secured area. A federal search warrant was executed on the safe on December 3, 2014, and inside the safe agents discovered $37,000 in United States currency. This $37,000 was also provided to Massoni by Harmon for Massoni to assist in paying off Harmon's debts as well as the construction on the Polk County residences. Massoni knew that the money was drug proceeds from the Harmon DTO.

Massoni agreed to hold the drug money for the Harmon DTO knowing full well the source of the cash. Harmon purchased the two safes to store the money in MASSONI's possession. Massoni acted as Harmon's "banker" in order to make large scale purchases for Harmon, including purchases on the Polk County construction project because Harmon was concerned that if she made the purchases that it might attract attention from the law enforcement officers who were investigating the Harmon DTO.

The defendant's actions assisted in Kenna Harmon's distribution of large amounts of methamphetamine. While there is no direct evidence that Massoni himself distributed methamphetamine for the Harmon DTO, his act in assisting Harmon as her "banker" and in helping spend the Harmon drug proceeds in a way that Kenna Harmon did not feel comfortable in doing made the Harmon DTO possible. If the main defendant in the Harmon DTO did not

6

have the means to spend the money made as part of the drug proceeds in the case, it would have seriously impended the ability of the organization to spend and distribute its assets.

Massoni's actions made possible the distribution of methamphetamine. Further, the defendant's possession of a firearm while participating in the conspiracy and the large scale money laundering activity the defendant engaged in to further the conspiracy, all reflect a serious danger to the general community, a danger that is present whenever methamphetamine distribution activity is involved. Methamphetamine is a highly addictive drug and the sale of it in communities decreases the quality of life in the community, increases danger from the use of firearms to protect that sale and diminishes the general characteristics of the neighborhood by the increased foot and vehicle traffic, loitering, and criminal activity such as shoplifting, burglary and robbery associated with addicts attempting to obtain money in order to purchase more methamphetamine. The Harmon DTO brought these drugs into Massoni's community and neighborhood and seriously degraded the quality of life within that community, with increased drug use, the possibility of decreased property values and affected the general safety of the surrounding community. A total sentence of 60 months reflects the serious nature of this offense and the need for adequate punishment.

### 2. History and Characteristics of the Defendant

The defendant had 1 criminal history point and his criminal history category under the sentencing guidelines is a level I. The PSR reflects that the defendant appears to have a good home life and a supportive family network. The defendant is 42 years old and reports that he has engaged in the use of methamphetamine, marijuana and mushrooms. The defendant has attended an outpatient treatment program which attempted to assist the defendant recover from his methamphetamine addiction.

Case 6:14-cr-03106-MDH   Document 721   Filed 08/29/16   Page 7 of 11

While the defendant does have a minimal substance history, it is significant to note that the defendant does have one felony controlled substance conviction for the distribution of controlled substances. The defendant's prior criminal history and his history of controlled substance use indicate that a sentence of probation or house arrest is inappropriate. The government believes a sentence of 60 months would be a just punishment taking into account the history and characteristics of the defendant.

### 3.  Need to Promote Respect for the Law

Based on the defendant's history and actions, the Government would contend that a substantial sentence is necessary to promote respect for the law, both on the part of the defendant, as well as on the part of the community as well. In this case, the Government believes a sentence of 60 months would promote this respect for the law.

### 4.  Need to Afford Adequate Deterrence to Criminal Conduct

A sentence of 60 months would provide a deterrent to this defendant and those who commit similar types of crimes. While it is impossible to truly determine if others will be deterred from committing future crimes, a 120 month sentence will specifically deter this defendant from committing additional crimes during his period of incarceration.

### 5.  Need to Protect the Public from Further Crimes of the Defendant

The defendant has shown that he is a danger to the community by his actions. A sentence of 60 months will give the community peace and security from the defendant at least for the period of time he is incarcerated.

### 6.  Need to Provide the Defendant with Education, Vocational Training, or Other Correctional Treatment

The Government would submit that this defendant would benefit from a program that allows him to obtain further education. The defendant appears to have above average

intelligence has a high school degree and likely would do well in obtaining further education. The government believes that the defendant would benefit from vocational training and other educational opportunities, as this would assist in his ability to obtain employment after his period of incarceration.

As noted, the defendant has reported a history of substance abuse involving marijuana, methamphetamine and mushrooms. The government believes that the defendant would benefit from the 500 hour substance abuse treatment program offered by the United States Bureau of Prisons, and would not object to the defendant's placement in the program.

### 7. <u>The Need to Avoid Unwarranted Sentencing Disparities</u>

The defendant's attorney suggests that that a sentence of shock time, house arrest and community confinement is sufficient in this case. The government disagrees. There is a serious risk of disproportionate sentencing if the defendant is not giving a significant period of incarceration. For example, this Court recently sentenced Jonathan Heredia (Case No. 14-03079-01-CR-S-MDH) to a sentence of 48 months for his involvement in the distribution of over 500 grams of methamphetamine that he obtained from the Harmon DTO. Like Massoni, Heredia had one criminal history point and his criminal history category was I. Like Massoni, Heredia also possessed a firearm during the commission of the drug trafficking offense, although, in Heredia's case, he also pled to Title 18 U.S.C. § 924(c). Like Massoni, Heredia had a supportive family and minimal history of drug abuse. Heredia's guideline range was 168 to 195 months. The court, however, sentenced Heredia to 48 months. The government asks for a sentence of 60 months here because Massoni's advisory guideline range is higher than Heredia's, and further, the very nature of Massoni's activity, in being the "bank" for Harmon, was more necessary to the successful functioning of the Harmon DTO than Heredia's sale of methamphetamine. The

Harmon DTO could more easily replace a distributor like Heredia and did after Heredia was arrested. It is more difficult to find someone like Massoni, who can utilize his relatively clean criminal history to essentially launder the Harmon DTO drug proceeds.

A sentence which does not include a significant period of incarceration would be disproportionate in light of the nature of the crime and other sentences imposed on similarly situated defendants. A sufficient period of incarceration is necessary to punish the defendant his actions. The government believes that a 60 month sentence would be an adequate punishment to accomplish this.

## IV.  CONCLUSION

Section 18 U.S.C. § 3553 requires this Court to impose a sentence that considers a variety of factors, including the advisory guideline range. The Government respectfully requests that the defendant's role in the offense, behavior and history, the need to promote respect for the law, the need to protect the public from the defendant, and any other statutory sentencing factors be considered in reaching an appropriate sentence. In conclusion, the Government respectfully requests this Court to impose a sentence of 60 months for Counts 1, 28, and 59. Such a sentence would be consistent with the circumstances of this case.

Respectfully submitted,

TAMMY DICKINSON
United States Attorney


*/s/ Randall D. Eggert*
RANDALL D. EGGERT Mo Bar #39404
Assistant United States Attorney
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri  65806
(417)831-4406

10

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of August, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

/s/ Randall D. Eggert
RANDALL D. EGGERT